**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Muein Daoud,

      Plaintiff,

            v.

City of Chicago, *et al.*,

      Defendants.

Case No. 21 C 6663

Judge Jorge L. Alonso

## <u>Memorandum Opinion and Order</u>

Pending before the Court are:

- A motion to dismiss filed by Defendants City of Chicago, Manuel Paredes, and Leonard Shoshi (the "City Defendants") (ECF No. 74);

- A motion to dismiss filed by Defendant David Sonna (on behalf of himself and Defendant Wow Chicago) (ECF No. 62); and

- A motion for service costs and attorney's fees filed by Plaintiff Muein Daoud against Sonna and Wow Chicago (ECF No. 49).

For the reasons below, the Court grants in part and denies in part the City Defendants'

motion to dismiss (ECF No. 74), grants in part and denies in part Sonna's motion to dismiss

(ECF No. 62), and grants Daoud's motion for costs and fees (ECF No. 49).

## Background[1]

Daoud is an ice cream truck vendor licensed to do business in Chicago as an agent or

employee of Royal Ice Cream. The Chicago Municipal Code allows "Mobile Food Vehicles" to

---

[1] This background is taken from the alleged facts in Daoud's complaint, which are accepted as true for purposes of Defendants' motions to dismiss, and the parties' uncontested exhibits. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). The Court also considers "not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

operate at forty designated locations around Chicago, one of which is at 437 S. Columbus Drive (the "Columbus Stand"), located on the east side of S. Columbus Drive between Jackson Drive and Ida B. Wells Drive and next to the Buckingham Fountain Flower Gardens. Only licensed Mobile Food Vehicles may park at the Columbus Stand between 5 a.m. and 2 a.m. Defendant Sonna, who does business as Wow Chicago, was hired by the Chicago Park District or Defendant UCG Associates ("UCG") to provide security near the Columbus Stand against any alleged unlicensed vendors.

Beginning June 2021, Defendants Anthony Caruso and an unnamed security guard (the "Defendant Security Guards") ordered Daoud to cease operating his ice cream truck at or near the Columbus Stand, wrongly claiming that Daoud was not licensed to operate his truck. On August 27, 2021, the Defendant Security Guards ordered Daoud to cease operating his truck for the same reason. Daoud refused, and the Defendant Security Guards called the police. Defendants Officer Paredes and other unnamed police officers arrived and ordered Daoud to cease operations and leave the Columbus Stand area. Daoud was given a ticket for operating his truck without a permit, even though he was properly licensed to operate his truck at the Columbus Stand.[2] Daoud claims that this interaction constituted an unreasonable seizure and a malicious prosecution.

On September 11, 2021, the Defendant Security Guards again ordered Daoud to cease operating his truck despite his license. Daoud again refused to do so, so the Defendant Security

---

proper judicial notice," as well as "additional facts set forth in [Plaintiff's briefing], so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (internal quotation marks and citations omitted).

[2] It appears that the Defendant Security Guards and Defendant Officers believed that Daoud needed an additional Chicago Park District permit to operate his ice cream truck at the Columbus Stand, given that the Columbus Stand was adjacent to Grant Park.

Guards again called the police. After arriving, Defendants Officer Shoshi and other unnamed officers (together with the officers present on August 27, 2021, the "Defendant Officers") ordered Daoud to cease operations and leave the Columbus Stand area and gave him another ticket for operating his truck without a permit. Daoud claims that this interaction similarly constituted an unreasonable seizure and malicious prosecution.

On September 30, 2021, the charges for which Daoud was ticketed on August 27 and September 11, 2021 allegedly terminated in Daoud's favor in a manner indicative of Daoud's innocence. In February 2022, an Illinois state court entered an order acknowledging that Daoud was legally entitled to sell ice cream as he had done at the Columbus Stand in August and September 2021.[3]

Based on the above interactions, Daoud alleges that he has suffered a loss of liberty, invasion of privacy, humiliation and indignities, mental and emotional pain, and economic harm.

On December 14, 2021, Daoud sued Defendants in this Court. His operative second amended complaint (ECF No. 58) includes the following claims:

- Count I against the Defendant Officers for unreasonable seizure under the Fourth Amendment to the U.S. Constitution;

- Count II against the Defendant Officers for malicious prosecution under the Fourth Amendment to the U.S. Constitution;

- Count III against the Defendant Officers, Sonna, and the Defendant Security Guards for violation of Daoud's due process rights under the Fourteenth Amendment to the U.S. Constitution;

- Count IV against the Defendant Officers and the City of Chicago for malicious prosecution under Illinois state law; and

---

[3] Given the parties' subsequent briefing, the Court understands that, technically, the order acknowledged that Royal Ice Cream was entitled to sell ice cream at the Columbus Stand, which applies to Daoud derivatively as its employee.

- Count V against Sonna, the Defendant Security Guards, and UCG and/or Wow Chicago for tortious interference with economic advantage under Illinois State law.

Two motions to dismiss also have been filed: one by the City Defendants; and another by Sonna (on behalf of himself and Wow Chicago). Daoud also has filed a motion for service costs and attorney's fees against Sonna and Wow Chicago. The motions have been fully briefed.

## Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Rule 12(b)(1) is the means by which a defendant raises a defense that the court lacks subject-matter jurisdiction," such as a challenge to the plaintiff's standing. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). Where the defendant makes a facial challenge to the sufficiency of the allegations of the complaint regarding subject matter jurisdiction, the

4

court "accept[s] all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015)). When the defendant contends that "'there is *in fact* no subject matter jurisdiction,'" even if the pleadings are "formally sufficient," the court may "look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173 (quoting *Apotex Dig., Inc. v. Sears, Roebuck, & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

## Discussion

### I.    City Defendants' Motion to Dismiss

For the reasons below, the Court grants the City Defendants' motion to dismiss under Rule 12(b)(6) as to Count IV, and denies the motion as to the other counts against them.

#### A.  Local Rule 7.1

At the outset, the Court notes that the City Defendants' motion to dismiss violates this Court's Local Rule 7.1 and case procedures regarding memoranda of law and citations because it exceeds fifteen pages and lacks a table of contents and table of cases. *See* N.D. Ill. Local R. 7.1; *see also* Case Procedures for Judge Jorge L. Alonso, *Memoranda of Law and Citations* ("The 15-page limitation on all memoranda contained in Local Rule 7.1 will be strictly enforced."). The City Defendants almost surely knew they needed to ask permission to file excess pages—indeed, they had asked permission to do so previously. (*See* ECF No. 23.) The motion thus is "subject to being stricken by the court" at its discretion. N.D. Ill. Local R. 7.1; *see also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) ("We have said that district courts may require parties to strictly adhere to their rules.") (citation omitted).

However, the Court also may exercise its discretion "in a more lenient direction," and will do so in this instance. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). Daoud did not take issue with the motion's lack of compliance with the Court's local rules, and evidently was able to fully respond to the City Defendants' arguments in his response. Therefore, the Court considers the motion and its arguments notwithstanding the City Defendants' conduct but warns the parties that any future oversized briefs or other failures to adhere to the Court's local rules and procedures may result in stricken filings, disregarded arguments, or other sanctions.

### B.  City Defendants' Exhibits

As another preliminary matter, the City Defendants attach eleven exhibits to their motion to dismiss and ask the Court to consider them without converting their motion into one for summary judgment. Daoud does not object to the Court considering most of these exhibits, but does object to the Court considering Exhibits 2, 3, 8, and 10, which are three body-worn camera ("BWC") videos taken during the incidents in question (Exhibits 2, 3, and 10), and a Chicago Park District map of Grant Park (Exhibit 8). The Court sees no issue with considering Exhibit 8 merely to demonstrate the basic geography of where the relevant incidents took place, which is undisputed, though its merits discussion below does not rely on that exhibit. However, the Court will not consider the BWC videos when evaluating the City Defendants' motion to dismiss.

Although materials outside the complaint generally are disregarded for motions to dismiss, a "narrow" exception exists if the document is "referred to in the complaint, provided it [is] a concededly authentic document central to the plaintiff's claim." *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). For example, "the usual example is a contract, in a suit for breach of contract." *Id.* Video evidence also may be considered at the pleadings stage if it is attached to the complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Bogie incorporated

the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint.").

Daoud's complaint does not attach or reference BWC footage, even in passing. Nor are the BWC videos central to Daoud's claims themselves (like a contract is to a breach-of-contract claim)—though they ultimately might be highly relevant for the parties' factual disputes related to those claims. The footage therefore falls outside the exception articulated in *Tierney*. Courts may find video evidence definitive on particular factual issues in certain cases, but those findings generally occur at the summary-judgment stage, not the pleading stage, unless the video footage is attached to or referenced in the complaint. *See Scott v. Harris*, 550 U.S. 372 (2007) (finding summary judgment appropriate in light of "a videotape capturing the events in question"); *Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 830 (N.D. Ill. 2021) (considering video evidence attached to the complaint); *Henderson v. Rangel*, No. 19-cv-06380, 2020 WL 5642943, at *2 n.1 (N.D. Ill. Sept. 21, 2020) (considering BWC footage that was "referenced in the complaint"). That is not the case here—Daoud's complaint does not attach or reference BWC footage, and the Court will not consider it at this stage.

The City Defendants heavily rely on a case from this District that considered an interrogation video at the pleadings stage. *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *9–10 (N.D. Ill. Sept. 24, 2013). But unlike here, the video in *Koh* was referenced in the coerced-confession complaint and captured "the entire interrogation . . . from a fixed perspective," including what the interrogating officer said during the interrogation. *Id.* at *10. *Koh* also uniquely reasoned that videos that discredit a complaint's allegations may be considered regardless of whether the videos were attached to the complaint, even at the pleadings stage. *Id.* at *9 ("*Scott* suggests that this Court may view the interrogation video to determine if,

as Wheeling believes it does, the video contradicts the way Mr. Koh's interrogation is pled in the

Kohs' complaint."). This Court does not agree with that principle, at least as applied to this case,

given the fundamentally different endeavor of a motion to dismiss compared with a motion for

summary judgment in considering evidence outside the complaint and the parties' agreement that

the Court should not convert the City Defendants' motion into one for summary judgment.

This case is instead akin to this District's more recent decision in *Brown v. City of*

*Chicago*, 594 F. Supp. 3d 1021, 1030 (N.D. Ill. 2022). In that case, the Court disregarded BWC

footage at the pleadings stage where the complaint made "passing reference to officer body-

cameras" and the BWC videos, which, while likely providing "key insights into the allegedly

unreasonable events that took place," were "not themselves dispositive of the facts at issue and

Plaintiffs could have brought this [] case if the BWC footage never existed." Here, Daoud's

complaint does not mention BWC footage and his claims themselves do not hinge on that

footage. The Court thus will not consider the footage in deciding dismissal at this stage. Of

course, the BWC footage might play heavily into a motion for summary judgment and might also

inform whether Daoud is justified in continuing to pursue his claims in light of the footage. *See*

*id.* at 1031.

### C. Count I

In support of dismissal of Count I, the City Defendants argue that the interactions

between Daoud and the defendant officers were not seizures, alternatively were supported by

reasonable articulable suspicion, and lasted a reasonable length of time. However, their

arguments chiefly rely not on Daoud's complaint or the parties' uncontested exhibits but on what

is purportedly shown in the BWC videos, which the Court declines to consider at this stage. With

the BWC videos excluded, the City Defendants have not articulated a reason for dismissal. Thus, the Court denies their motion to dismiss as to Count I.

### D. Counts II and IV

Similarly, the City Defendants' arguments that Daoud's malicious-prosecution claims in Counts II and IV should be dismissed mainly rely on the excluded BWC videos—the exclusion of those videos from the Court's consideration at this stage thus dissolves most of their arguments. In their reply, the City Defendants also argue for the first time that Daoud has failed to state a federal malicious-prosecution claim because he has not alleged a post-legal-process seizure as is required. However, because this argument was raised for the first time in the City Defendants' reply brief and Daoud did not have an opportunity to respond to it, the Court ignores it. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."); *Cairone v. McHenry Cty. College*, No. 17-cv-4247, 2019 WL 3766112, at *9 (N.D. Ill. Aug. 9, 2019) ("[D]efendants did not raise this argument in their opening brief and therefore have waived the argument.").

One aspect of the City Defendants' motion is focused on Daoud's complaint allegations and thus warrants further discussion. Specifically, the City Defendants claim that Daoud fails to plead malicious prosecution under Illinois law in Count IV because he did not sufficiently allege that the criminal proceedings against him were terminated in a manner indicative of innocence. Daoud counters that his complaint adequately pleads this element because he alleges this element explicitly and alleges that an Illinois state court held in February 2022 that he was legally entitled to sell his ice cream as he had been doing. (*See* Compl. ¶¶ 32–33, ECF No. 58.)

To state a claim for malicious prosecution, Daoud "must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the

defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996) (internal quotation marks and citation omitted). "In regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Id.*

Here, Daoud's allegations are not enough. In full, Daoud alleges that "[o]n or about September 30, 2021, the charges for the violations outlined in the paragraphs above terminated in Plaintiff's favor, indicative of Plaintiff's innocence." (Compl. ¶ 32, ECF No. 58.) Even at this stage, he must allege the circumstances surrounding the dismissal of his criminal proceedings to plausibly state a claim for malicious prosecution under Illinois state law. *See Swick*, 169 Ill.2d at 513–14 ("The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution."); *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 795 (C.D. Ill. 2020) (dismissing malicious-prosecution claim that had more thorough allegations with the "simple" addition that "the proceedings against Mr. Heidelberg terminated in a manner indicative of innocence . . . ."); *Allen v. Berger*, 784 N.E.2d 367, 372 (Ill. App. Ct. 2002) (concluding that allegations "that the U.S. Attorney voluntarily dismissed the indictment" and "the criminal prosecution was 'terminated in [Allen's] favor'" were "not [] enough to plead or prove that the prosecution was terminated in Allen's favor"). Daoud's conclusory allegations that the criminal proceedings were terminated in his favor in a manner indicative of his innocence leave too much to be desired— they do not indicate who dismissed the allegations, how or why they did so, or any other circumstances plausibly showing that the charges were terminated in a manner indicative of

Daoud's innocence. The Illinois state court's conclusion in a different, civil case that Daoud was legally entitled to sell ice cream at the Columbus Stand does not save his claim, as that ruling was not part of Daoud's criminal proceedings underlying his Illinois malicious-prosecution claim and do not indicate how those criminal proceedings were terminated, and Daoud has not explained otherwise. Therefore, the Court will dismiss Count IV of Daoud's complaint for failure to state a claim.

### E.  Count III

In their motion to dismiss, the City Defendants argue that Daoud's Fourteenth Amendment claim in Count III fails as a substantive-due-process claim because Daoud was not convicted based on the tickets he received, even if the City Defendants fabricated evidence to issue the tickets. In response, Daoud clarifies that his claim is based on procedural due process, not substantive due process, and that he has adequately pleaded a deprivation of his right to sell ice cream based on his licensure. In reply, the City Defendants argue that Daoud's allegations are insufficient for a procedural-due-process claim as well.

The Court denies the City Defendants' motion to dismiss. In their opening brief, the City Defendants challenged Count III on substantive-due-process grounds only, not on procedural-due-process grounds. Once Daoud confirmed in his response that Count III is instead based on procedural due process, the City Defendants pivoted in their reply and for the first time argued that Count III also fails as a procedural-due-process claim. Because the City Defendants raised a procedural-due-process challenge for the first time in their reply, that challenge is waived at this stage and their motion to dismiss Count III is denied. *See Darif*, 739 F.3d at 336; *Cairone*, 2019 WL 3766112, at *9.

### F.  Qualified Immunity

Like most of the City Defendants' merits arguments, their assertion of qualified immunity relies on the BWC footage that the Court disregards at this stage. Without that evidence, the City Defendants have not explained why the Court must find qualified immunity based on Daoud's complaint allegations. The Court thus will not find qualified immunity for the City Defendants for purposes of their motion to dismiss.

Accordingly, the Court grants the City Defendants' motion to dismiss as to Count II and denies the motion in all other respects.

## II.    Sonna's Motion to Dismiss

Sonna presents several grounds for dismissal under various federal rules, which the Court addresses and rejects in turn below. Sonna also moves to dismiss Wow Chicago as a non-legal entity that he does business as, and thus an improper defendant, which Daoud has conceded. The Court thus dismisses Wow Chicago as a defendant in this case.

### A.  Rule 12(b)(5) Motion to Dismiss for Insufficient Service

Like in his earlier response to Daoud's Rule 4 motion for service costs and attorney's fees, discussed further below, Sonna claims in his motion to dismiss that Daoud did not serve him or Wow Chicago within ninety days of filing the complaint on April 29, 2022. This argument entirely ignores that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*." Fed. R. Civ. P. 4(m) (emphasis added). At Daoud's request, the Court gave Daoud until August 28, 2022 to serve Sonna and Wow Chicago—and Daoud did so on August 5, 2022. Service therefore was proper, and the Court denies Sonna's motion under Rule 12(b)(5).

**B.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Sonna argues that the Court lacks subject-matter jurisdiction because Daoud does not have standing to bring Counts III and V, either facially or factually. Facially, Sonna argues that Daoud has not alleged a concrete injury, partly because he did not allege that the only place he could operate his ice cream truck was at the Columbus Stand. Sonna also argues that Daoud lacks standing in fact because Daoud himself does not have a business license and was not a party to the state litigation finding that the ice cream truck could be operated at the Columbus Stand—instead, Royal Ice Cream, Inc. has the license and was the plaintiff in the state litigation. Sonna also claims that Daoud has not alleged that he can assert claims on Royal Ice Cream's behalf and that any such allegations would be barred by *res judicata* because Daoud could have brought his current claims in the state-court action.

Daoud responds that he has facial standing because his factual allegations of injury suffice at the pleading stage and has factual standing because the Chicago Municipal Code authorizes employees of Royal Ice Cream to operate mobile food vehicles and thus Daoud himself was licensed to operate as he did. Daoud adds that the more ice cream he sold, the more money he made—evidently to further bolster his standing allegations. He also argues that *res judicata* should not apply because neither Sonna nor Wow Chicago was a party to the state lawsuit brought by Royal Ice Cream.

"To bring suit, a plaintiff must plead an injury in fact attributable to the defendant's conduct and redressable by the court." *Tyler v. Hennepin Cty., Minnesota*, __ U.S. __, 143 S. Ct. 1369, 1374 (2023) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,'" because the court will "presume[e] that general allegations embrace those specific facts

that are necessary to support the claim." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278

(7th Cir. 2020) (quoting *Lujan*, 506 U.S. at 561) (alteration in original). This facial challenge

requires the plaintiff only to "plausibly suggest each element of standing, with the court drawing

all reasonable inferences in the plaintiff's favor." *Id.* But "[o]nce the allegations supporting

standing are questioned as a factual matter . . . the plaintiff must support each controverted

element of standing with . . . a showing by a preponderance of the evidence, or proof to a

reasonable probability, that standing exists." *Id.* (internal quotation marks and citations omitted).

Here, the Court finds that Daoud has facial and factual standing and the Court therefore

has subject-matter jurisdiction over this case. In his complaint, Daoud alleges that due to

Defendants' actions, he "suffered significant injuries, including but not limited to the loss of

liberty, invasion of privacy, humiliation and indignities, and suffered great mental and emotional

pain in an amount yet to be ascertained," and "was damaged financially and otherwise." (Compl.

¶¶ 34, 64, ECF No. 58.) The Court also credits Daoud's statement in his response brief that "the

more ice cream that Plaintiff sold, the more money he made," which is consistent with his

allegations of being prevented from operating his ice cream truck at the Columbus Stand. (ECF

No. 70 at 7.) *See Phillips*, 714 F.3d at 1020 ("We must also consider additional facts set forth in

Phillips's district court brief and appellate briefs, so long as those facts are consistent with the

pleadings." (internal quotation marks and citation omitted)).

Daoud has sufficiently alleged his own concrete injury to establish facial standing. He

alleges not only that he suffered various reputational, mental, and emotional harms, but also

alleges economic harm due to his inability to freely sell ice cream from his truck at the

Columbus Stand because of Sonna's and other Defendants' alleged conduct, regardless of

whether he may have been allowed to sell ice cream elsewhere. Daoud thus has adequately

pleaded, among other things, particularized "monetary" and "reputational harms" sufficient to confer standing, and need not plead additional details to establish facial standing. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4d 1184, 1190 (7th Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)); *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (internal quotation marks and citation omitted)); *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 920 (7th Cir. 2002) ("It is easy to imagine facts *consistent* with this complaint and affidavits that will show plaintiffs' standing, and no more is required." (emphasis in original)).

The Court also finds Sonna's factual standing challenge lacking. Sonna relies solely on evidence indicating that the relevant licensure for this case was provided to Royal Ice Cream—not to Daoud himself—and that Royal Ice Cream, not Daoud, was the plaintiff in the state action referenced in Daoud's complaint. However, the Chicago Municipal Code indicates that Royal Ice Cream's license for its ice cream trucks extends to its employees, like Daoud.[4] Chicago Mun. Code § 7-38-115(j) ("Mobile food vehicles shall be operated only by the mobile food vehicle licensee *or by an authorized employee of such licensee*." (emphasis added)). Therefore, the Court sees no standing issue with Daoud asserting injuries he purportedly suffered by not being able to operate his Royal Ice Cream truck as he was entitled to as a Royal Ice Cream employee. Similarly, though Daoud was not himself a party to the state action, that action's conclusion that Royal Ice Cream was licensed to operate as Daoud had done presumably extended to Daoud as a

---

[4] Daoud refers to himself as an "agent/employee" of Royal Ice Cream—which the Court takes to qualify as an "employee" for purposes of the Chicago Municipal Code, particularly since Sonna has not argued otherwise.

Royal Ice Cream employee. Therefore, Daoud has established standing to sue Sonna as a factual matter as well.

As to *res judicata*, the Court likewise finds no basis for dismissal. In Illinois, "[r]es judicata bars a subsequent action if three requirements are met: '(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies.'" *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956 (7th Cir. 1997) (quoting *Downing v. Chi. Transit Auth.*, 642 N.E.2d 456, 458 (Ill. App. Ct. 1994)). As Daoud points out, neither Sonna nor Wow Chicago was a party to the state lawsuit from which Sonna attempts to apply the doctrine, and Sonna has not explained how he nevertheless is in privity with any parties in the state action—nor has he explained how Daoud's state case meets the other requirements of *res judicata*. The Court therefore will not apply *res judicata* here. *See Farmer v. Lane*, 864 F.2d 473, 476–77 (7th Cir. 1988) ("Because Farmer's state court action named different defendants than did his federal complaint, res judicata appears to be inapplicable here.").

### C.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Lastly, Sonna argues that Daoud has failed to state a claim for a due process violation in Count III. Specifically, Sonna claims that Daoud did not sufficiently allege Sonna was acting with state authority or state action, and did not allege a cognizable liberty interest to support a substantive-due-process claim. In his reply, Sonna also argues that Daoud failed to allege a procedural-due-process violation because Daoud refused to cease operating his ice cream truck despite the security guards' orders to do so.

In response, Daoud clarifies that Count III is based on procedural due process, not substantive due process, and argues that his allegations sufficiently place Sonna as a non-state

actor who nevertheless acted in concert with state actions and thus can be subject to a due process claim.

First, Daoud has sufficiently alleged that Sonna and his employees acted under color of state law. Though Sonna and his employees were private persons, "[p]rivate action can become state action when state actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights" and in other circumstances. *Hallinan v. FOP of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). That is what Daoud alleges here—he claims that Sonna "worked in concert and under color of state law with employees and agents of the Chicago Park District and/or the Chicago Police Department" and provided security for the Chicago Park District, and bases Count III at least in part on the police officers arriving at the security guards' request, ticketing Daoud, and preventing him from selling ice cream. (Compl. ¶¶ 7, 51, ECF No. 58.) This is enough to plausibly suggest that Sonna and his employees worked with Chicago police officers to ticket Sonna and prevent him from selling ice cream and that they operated under color of law, and adequately notifies Sonna of the claims against him. *See Garagher v. Marzullo*, 478 F. Supp. 2d 1008, 1011 (N.D. Ill. 2006) (finding "sufficient factual predicate to put defendants on notice" and suggest that defendants were acting under color of law and in concert with state actors); *see also Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) ("[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.").

Second, Sonna's arguments that Daoud has not alleged a cognizable liberty interest to support a substantive-due-process claim are moot given Daoud's clarification that Count III is based solely on procedural due process. As to procedural due process, Sonna, like the City Defendants, argues dismissal on this basis for the first time in his reply, and thus has waived the

argument at this stage. *See Darif*, 739 F.3d at 336; *Cairone*, 2019 WL 3766112, at *9. The Court thus denies Sonna's motion to dismiss Count III. Because the Court does not dismiss federal-law Count III, the Court also denies as moot Sonna's request to relinquish supplemental jurisdiction over state-law Count V.

## III. Daoud's Motion for Fees Against Sonna and Wow Chicago

Daoud has moved for costs of service and attorney's fees against Sonna and Wow Chicago[5] under Federal Rule of Civil Procedure 4(d)(2), claiming that they refused to waive service and thus must pay for both the costs incurred in serving them and the reasonable attorney's fees related to Daoud's motion to recover those costs. Sonna (for himself and on Wow's behalf) responds with various claims that Daoud's eventual service was late and that Daoud did not provide sufficient proof that Daoud sent Sonna a waiver of service in May 2022—though Sonna does not directly deny that Daoud did so—so Sonna and Wow had good cause not to waive service. As explained below, the Court agrees with Daoud. Accordingly, Sonna must reimburse Daoud for his costs of service and reasonable attorney's fees associated with his motion for costs, totaling $5,700.

Rule 4(d)(2) provides that if a defendant "fails, without good cause, to sign and return a waiver [of service] requested by a plaintiff . . . the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2).

Sonna's good-cause arguments fall flat. Daoud has filed copies of the waivers he sent Sonna and Wow on May 2, 2022, which were delivered May 4, 2022, and there is no dispute that

---

[5] As explained above, Wow Chicago has been dismissed as a defendant in this case as a non-entity and a business name for Sonna himself. The Court therefore considers the motion as one against Sonna.

neither Sonna nor Wow returned a signed waiver within thirty days, so Daoud eventually served

them on August 5, 2022. Sonna thus has no reasonable basis to argue that he and Wow did not

receive waiver forms from Daoud. As explained above for Sonna's motion to dismiss, Sonna also

has no basis to point to Daoud's service outside the standard ninety-day period as good cause,

because this Court expressly granted Daoud additional time to serve Sonna and Wow by August

28, 2022. (ECF No. 44.) Daoud's August 5, 2022 service of Sonna and Wow thus was timely and

does not excuse Sonna and Wow's failure to waive service of process. The Court therefore "must

impose" on Sonna Daoud's uncontroverted service expenses, which Daoud has shown to be

$120.

In total, Daoud requests $5,700[6] for the costs of service of process and reasonable

attorney's fees.[7] (ECF No. 66 at 7.) Sonna argues that Daoud's $300-per-hour rate is too high (in

part because of a purported misrepresentation of Daoud's attorney's level of experience), that

Daoud failed to adequately show how much Daoud's counsel charges Daoud by the hour, and

---

[6] Daoud requests attorney's fees at a rate of $300 per hour, applied to nineteen hours of work (which calculates to $5,700), and costs of service of $120. Daoud thus appears to ignore the costs of service and requests $5,700 in total from Sonna.

[7] Though Daoud has not described his efforts to obtain reimbursement for his service costs from Sonna so as to make his motion "required" to recover those costs under Rule 4(d)(2)(B), Sonna has consistently argued before the Court that service on him and Wow was improper and he need not pay those costs. The Court takes Sonna's arguments at face value as his refusal to pay Daoud's service costs absent a court order, thus making Daoud's motion (and its associated reasonable attorney's fees) necessary to recover Daoud's service costs. *Cf. Long Co. v. Hawaii Baking Co.*, No. 02 C 3082, 2003 WL 262421, at *2 (N.D. Ill. Jan. 29, 2003) ("[T]here is a powerful argument that, having failed to make any informal request for reimbursement of service costs, plaintiff has not shown that a motion was 'required' to obtain reimbursement. . . . The public interest demands that attorneys, as officers of the court, make some minimal effort to avoid filing motions over matters that can easily be informally resolved."); *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1027 (D. Minn. 2018) (approving denial of attorney's fees where the plaintiff "neither completed the meet-and-confer process nor confirmed that Dahl was unwilling to pay her service-of-process expenses prior to initiating the motion").

that Daoud provided inadequate documentation of the hours worked. Daoud counters that his requested attorney's fees are reasonable and sufficiently documented.

Attorney's fees typically are calculated "using the lodestar method (multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended) and then adjusting that figure to account for various factors, including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019) (citations omitted).

The attorney's fees Daoud calculates are reasonable here. The Court does not find that Daoud's attorney materially misrepresented his experience in declaring that he had "been an attorney for over a year," even though he had been admitted to the bar for only approximately ten months. Though technically inaccurate, the statement clearly referred to when Daoud's attorney graduated from law school rather than when he was admitted to the bar. This mistake also does not materially impact Daoud's calculated reasonable attorney fees, as they are based on a calculation for attorneys in their first three years of practice—which Daoud's attorney was in any event.

Sonna also claims that the Court must consider, and Daoud has not shown, how much Daoud's counsel charges in practice. But Daoud points out that his counsel works on a contingency fee basis and does not charge him an hourly rate. The "next best evidence" of a reasonable rate thus is "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care v. Rockford Bd. Of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Here, Daoud points to comparable, inflation-adjusted fee awards in this District and to the Laffey Matrix, which is a chart of hourly rates in the Washington, D.C. area prepared by the

U.S. Attorney's Office in that district and suggests an $381 hourly rate for a first-year attorney. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649 (7th Cir. 2011). In response, Sonna simply states that Daoud's requested fees are excessive for the work performed in the Chicago area, without citing any authority or evidence or proposing an alternative calculation.

Considering this, the Court finds that $300 is a reasonable hourly rate here and that Daoud has adequately specified the nineteen hours of attorney time associated with his motion. Daoud provided day-by-day breakdowns of the time he spent preparing briefing and the like, and the hours spent do not strike the Court as unreasonable, including given Sonna's failure to supply any facts or cases supporting a lower fee award.

Therefore, the Court grants Daoud's motion for cost of service and attorney's fees and awards Daoud $5,700 in costs and fees to be paid by Sonna.

## Conclusion

For the reasons above, the Court grants in part and denies in part the City Defendants' motion to dismiss (ECF No. 74) and accordingly dismisses Count IV. The Court grants in part and denies in part Defendant Sonna's motion to dismiss (ECF No. 62) and accordingly dismisses Wow Chicago as a defendant in this case. The Court grants Daoud's motion for cost of service and attorney's fees (ECF No. 49) and accordingly awards Daoud $5,700 in costs and fees to be paid by Sonna.

The moving Defendants' answers are due fourteen days after entry of this order. *See* Fed. R. Civ. P. 12(a)(4)(A). A telephonic status hearing is set for September 7, 2023, at 9:30 a.m. The

Court reminds the parties that they shall file a joint status report within seven days of the entry of this order. (*See* ECF No. 36.)

**SO ORDERED.**                                    **ENTERED: August 22, 2023**

_____

**HON. JORGE ALONSO**

**United States District Judge**